UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:24-cr-227-WFJ-TGW

ELIJAH KEVON GAY
_____/

**COURT'S MEMORANDUM ON MOTION TO SUPPRESS**

On January 6, 2025, the Court held a suppression hearing on the Defendant's motion to suppress. Dkt. 25. The Court denied the motion from the bench, to avoid docket delay and permit the parties to promptly resolve or prepare for trial. This is the Court's memorandum discussing those issues and the Court's ruling.

The issue at bar was whether Mr. Gay's probation officers had reasonable suspicion to search his dwelling without a warrant. That search uncovered a pistol which led to a full warranted search by the Sheriff's Office. The Court finds that the Probation Office did have reasonable suspicion that Mr. Gay was violating or in violation of his probation.

The Government called three witnesses at the evidentiary hearing. The Court credits the testimony, which was basically unrebutted factually.

*Sheriff's Deputy Curtis*

The first witness was Deputy Jared Curtis of the Hillsborough Sheriff's Department. Curtis was a patrol deputy in the area where Mr. Gay lived. Curtis

investigated gang activity in that area, and is a current street crimes gang liaison. He testified about a local street gang called A-Block, named after Aley Street in Hillsborough County where Mr. Gay grew up. Tr. at 4–5 (hearing transcript filed on this docket). Mr. Gay and his cousin Richard Stephens have large red "A" tattoos on their front neck as a gang symbol. *Id*. at 5. During the 2022-2023 time frame, Deputy Curtis observed social media posts where Mr. Gay displayed himself showing the colors, signs, and tattoo of the A-Block gang, including displaying large amounts of marijuana, and "regularly possessing" firearms which included pistols and rifles. *Id*. at 6, 30. Mr. Gay possessed weapons in some of these social media posts.

     Deputy Curtis testified that he identified Mr. Gay in a 2022 shooting, by identifying a white Mercedes vehicle involved and a necklace that the shooter wore, comparing this evidence with Mr. Gay's social media posts. The shooting victim was interviewed in the hospital and was uncooperative. Mr. Gay was also interviewed and was not cooperative. *Id*. at 8.

     Curtis testified that Mr. Gay was in a second shooting in 2022 near Aley Street involving pistols and long guns. Mr. Gay was identified as a shooter. *Id.* at 21. Mr. Gay's white Mercedes was "riddled with bullets, had several bullet holes in it." *Id.* at 9, 21. During this investigation Mr. Gay "denied shooting back

admitted to his vehicle being shot up and was uncooperative as to whom he exchanged gunfire with at that point," according to Curtis. *Id.* at 9.

The record is unclear, but in one of these shootings, most likely the first one, the victim identified Mr. Gay as the shooter. But then the victim became uncooperative. *Id*. at 22.

Curtis testified about a third shooting involving Mr. Gay, stating that Mr. Gay had attached his license plate to a white Dodge Charger. Curtis had seen the Charger in music video-style social media postings with Mr. Gay. The Charger was involved in a shooting emanating from a Tampa night club. Deputy Curtis reached out to the Tampa Police Department who had put out an alert on the Charger. Tampa police went to Mr. Gay's residence and viewed the Charger with bullet holes in it. Mr. Gay admitted to being at the nightclub and his vehicle being struck by gunfire but denied shooting back despite several shell casings being located. *Id.* at 9–10. The case was eventually closed due to victims being uncooperative and refusing to come forward. Mr. Gay refused to identify who else was in the Charger with him. *Id*. at 23.

On August 2, 2023, Deputy Curtis encountered Mr. Gay in the same Charger, still with the improper license tag. *Id.* at 10. He knew this to be Mr. Gay's car. When the Deputy sought to stop the Charger, it fled and ended up in an accident. Mr. Gay exited the driver's side with a gun, and his brother Isaiah Gay

3

exited the passenger side with a gun. *Id.* at 11. Mr. Gay fled on foot, tossing away the gun, and was then arrested. Mr. Gay's firearm from this August 2 incident was traced back to another, prior shooting through ballistics. This prior shooting has not been connected to Mr. Gay, *id*. at 28, but this connection was noted in the law enforcement NIBIN database. *Id*. at 56.

      Mr. Gay was then placed on probation for these crimes. In early 2024 Deputy Curtis contacted Gay's probation officer. There were additional posts on social media in which Mr. Gay posed with firearms, discussed below, as well as an incident that occurred with Stephens, the A Block co-founder and cousin. *Id.* Shortly after the inculpatory video discussed below was posted, Deputy Curtis contacted Mr. Gay's probation officer and conveyed to her "pretty much everything" Curtis conveyed at the hearing about Mr. Gay's history and the social media posts. *Id*. at 17. Curtis informed the probation officer the Mr. Gay was still posting videos, still in the presence of firearms, was a known violent offender, and was "still actively engaged." *Id.* at 17–18. He told the probation officers that Mr. Gay was "still actively posting videos signifying gang involvement in the presence of firearms." *Id.* at 29. Curtis shared the social media "handles" with the probation officers. *Id*. at 18. He also talked to Sheriff Deputy LeDonne who was going to be involved in the matter because LeDonne was a member of the violent crime reduction section. *Id.* at 18–19.

4

During his testimony, Deputy Curtis discussed this video. Deputy Curtis also introduced another social media post of December 9, 2023 (Exhibit 2 found at Dkt. 38-1 at 2) of Mr. Gay, which was posted after his state arrest by Deputy Curtis but one month before he received probation: It shows Mr. Gay holding some type of "high powered rifle, and a pistol down by his feet." *Id.* at 16, 25.

As a result of this arrest by Deputy Curtis, on January 4, 2024, Mr. Gay entered a plea of guilty to three felony accounts: fleeing to elude highspeed; possession of a firearm during commission of a felony; and tampering with physical evidence. He was placed on probation for 36 months. *See* Dkt. 38-2 at 2. Probationary terms included not possessing a firearm or replica or weapon, not associating with persons engaged in criminal activity, and other standard terms. *Id.* at 2–4. The probationary terms also included Mr. Gay participating in home visits by Probation, and a prohibition on illegal drug use or being in places where drugs were used. *Id.* at 2–3.

As part of the documentation for probation, Mr. Gay signed the "Florida Department of Corrections Instructions to The Offender" form and acknowledged receiving same, noting that if he had any questions about this information, he would ask his probation officer for clarification. Dkt. S-38-3 at 2–3. One paragraph of this document states:

<u>**HOME VERIFICATIONS**</u>

> Probation officers will conduct home verifications routinely and need to have access to your residence. Probation officers have the right to search your residence.

*Id.* at 3.

During his second meeting with probation, Mr. Gay was informed of the possibility of searches of his residence. Tr. at 71–72. The probation officer testified she does this "[t]o make sure that everybody knows the standard conditions of supervision." *Id*.

On January 26, 2024, the video Deputy Curtis viewed was posted online, including on youtube.com. It is in this record identified at docket 38 (G. Exhibit 1). In the nature of a hip-hop or rap music video, the video prominently featured Mr. Gay as a performer. He was holding large stacks of currency, four to seven inches thick, suggestive of narcotics or contraband proceeds. Tr. at 14–15; e.g., G. Ex. 1 at :16 (cash stack 5-8" thick). He did not possess firearms but was in close proximity to several street-type weapons ("pistols and high-powered rifles with extended magazines", Tr. at 14), including one that appeared to be a mini-Draco-type, "banana clip" assault weapon. G. Ex. 1 at 2:12. Right next to Mr. Gay, the person bearing this weapon pointed it menacingly at the camera and viewer. *Id.* at 2:13. The video showed Mr. Gay in the presence of his "known associates with firearms." Tr. at 46. Mr. Gay prominently displayed several times for the camera the large red A-Block gang tattoo on his neck, *id*. at 15–16; G. Ex. 1 at 1:08-1:12,

6

1:52, and rapped several references to that gang by name in the presentation. He threw up the A-Block gang hand signs in the video. G. Ex. 1 at :29, 1:54; Tr. at 19. Active in this video and participating closely with Mr. Gay was Gay's cousin Stephens, who had an active warrant for attempted murder and displayed his gang tattoo and fanned cash. G. Ex. 1 at 1:57. Several persons in the video are smoking what appear to be marijuana joints; Mr. Gay expels a large puff of smoke, *Id.* at :20, :48-50. His brother Isaiah is also present. Tr. at 13. This video was posted after Mr. Gay was placed on probation. G. Ex. 1 (Jan. 26, 2024).

*Deputy LeDonne Testimony*

Detective Brenton LeDonne testified. He first was involved in the related matter by conducting the search for Stephens on the attempted murder warrant. In this effort, they learned that Stephens' close associate Mr. Gay was on probation. Deputy Curtis provided background to the Probation Office, basically social media that was associated. Tr. at 32. LeDonne viewed the social media, including the January YouTube posting described above. The subject video had Mr. Stephens in it, inside Mr. Gay's residence. LeDonne viewed the firearms in the video as real, not replicas, based on his training and experience. *Id*. at 51.

Detective LeDonne attended a meeting with probation officers, who were aware of some of the media postings on Instagram, which led to the YouTube video. He spoke with them multiple times. *Id*. at 48. There was consideration

given that Stephens may be staying at Mr. Gay's residence. *Id*. at 33. He was aware that Mr. Gay's social media handle was "Almighty Rico." *Id*. at 34. The handle was on the posting in December 2022 where Mr. Gay was posing with the rifle, and pistol at his feet (seen in Exhibit 2 here). This December 2022 posting came after Curtis' arrest of Gay, but before Gay pled guilty.

Stephens was arrested February 12, 2024 prior to the instant search. Tr. at 35. Det. LeDonne noted that Stephens' videotaped presence in Gay's house could have led to firearms associated with Stephens' attempted murder being in the Gay residence. *Id.* At the February 26 search of Gay's dwelling, a rented townhouse, the probation officers conducted it. LeDonne stayed outside in an unmarked, plain-clothed capacity, until the probation officers reported that they had encountered a pistol in an open red bin that was under a loose pile of clothes on the floor of a bedroom Mr. Gay shared. *Id.* at 35–38. At the time the probation officers found the gun, they stopped the search and turned the matter over to Detective LeDonne. *Id.*; *see* Exhibit 3 (body camera footage).

LeDonne then did a security sweep and thereafter obtained a warrant. Although not particularly relevant now, the search warrant showed that the loose pile of clothes and proximity had personal documents and mail belonging to Mr. Gay, including his probation papers. *Id.* at 42; Exhibit 3 at 12:10. Also, search pursuant to the warrant yielded an assault-type rifle in the same room, from under a

8

dresser. *Id*. at 43.  It appears to be the same rifle Mr. Gay displayed in Exhibit 2, the December 2022 posting, the social media post from the Almighty Rico account, referenced above. *Id.* at 43.  LeDonne also noted that in searching Gay's townhouse he determined that Gay's rifle posting in Exhibit 2 had a background that shows the photograph was taken in Gay's townhouse. *Id.* at 44.

*Probation Officer Notes and Testimony*

The Probation Office's contemporaneous notes show that on February 2, 2024, Deputy Curtis contacted the office, inquiring if Mr. Gay is permitted to be around firearms or replicas, as Mr. Gay was in a video with potential firearms or replicas, and was interacting with another person in the video who has two current warrants. *See* Dkt. 38-4 at 2.  The notes further show that the Probation Officer notified Mr. Gay of the expectations of supervision on February 8, 2024, reviewing the standard conditions and that "he is to not have or be around weapons, firearms, or replicas" nor have "involvement in crime accounts." *Id*.

Later, the notes state that probation officers had contact with Detective LeDonne to discuss the details pertaining to the offender's peers and search arrangements, noting that "Stephens has been arrested." Dkt. 38-4 at 3.  The notes show that at the search an apparent Glock-style gun was found, which appears similar to a gun Mr. Gay was seen possessing on an earlier social media post. *Id.* at 4.

9

Probation Officer Patterson testified. Tr. at 61. She stated that Probation Officers did the initial search on February 26, 2024. The decision to search required probation supervisory approval with an additional request for the team required when there are concerns pertaining to safety. *Id*. at 63. The safety team was "due to the offender's association…." *Id.* at 70. The probation officers were concerned about Mr. Gay's history with firearms. *Id.* at 70–71. She stated that they possessed reasonable suspicion. Her records show that Stevens had been arrested on February 14. *Id*. at 73. She noted that at the time the gang video was posted on January 26, Stevens was still at large. *Id*. at 86.

The defense cross-examined the Government's three witnesses. The defense did not present evidence affirmatively but offered an exhibit, (Defense 1), the body camera footage, that the Government used in its case in chief. Tr. at 87.

## Discussion

As part of his probation, Mr. Gay signed a Department of Corrections document stating that the Probation Office had a right to search his residence. He was also bound by the terms described above. Given his crime-ridden past and present gang affiliation these were serious constraints necessary for public safety.

The Eleventh Circuit has noted that probationers do not possess the same privacy interests as other citizens. "[P]robationers are more likely to commit crimes than other citizens, and the government therefore has an interest in keeping

10

close watch over them." *United States v. Carter*, 566 F.3d 970, 974 (11th Cir. 2009) (citing *United States v. Knights*, 534 U.S. 112, 119–21 (2001)). Here we had a probationer for gun possession, a gang leader involved in prior gang and shooting-related activity, still apparently associating with the same persons and conduct. Mr. Gay's illegal gang activity appeared, like that of the defendant in *Carter*, *supra*, to be ongoing. This underlying conduct was not a "one-off" or one-time event but evidence of continued and organized illegal activity.

      The probation order contains a term for home visitation by the probation officer. Dkt. 38-2 at 3. In *Carter*, the Eleventh Circuit held that the probation order containing such a term reduced his expectation of privacy. 566 F.3d at 975. "[W]hen a probationer has a condition of probation reducing his expectation of privacy, and the government has a higher interest in monitoring the probationer due to the nature of his criminal history, a search can be permissible when supported only by reasonable suspicion." *United States v. Riley*, 706 F. App'x 956, 960 (11th Cir. 2017) (citing *Carter*, 566 F.3d at 975).

      Reasonable suspicion is more than a hunch but is less demanding than probable cause and needs only a "minimal level of objective justification." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000)). One must consider the information known to the probation officer prior to the search. *United States v. Yuknavich,* 419 F.3d 1302,

1311 (11th Cir. 2005). And the inquiry is not whether there was reasonable suspicion that a crime was afoot; the inquiry is reasonable suspicion of a probation violation.

Here the judgment of probation had the requirement for home visits, Dkt. 38-2 at 3. Mr. Gay also signed the Department of Corrections instructions providing that probation officers conduct "home verifications routinely and need to have access to your residence. Probation officers have the right to search your residence." Dkt. S-38-3 at 3. Mr. Gay's expectation of privacy was well less than that of a non-probationer. These forms appear to be similar or identical to the ones signed by the probationer in *United States v. Collins,* 683 F. App'x 776, 777 (11th Cir. 2017). The Court noted Mr. Collins' reduced privacy interests given his status. *Id.* at 778.

The January 26 video posting showed with certainty that Mr. Gay, a probationer with a violence-ridden gang-oriented past, was associating closely with persons engaging in criminal activity. He was in close presence of his cousin, co-founder of the A-Block gang and the subject of an active attempted murder warrant. He was participating with persons who appeared to be smoking marijuana, and he was smoking something himself. The video shows Mr. Gay actively involved in gang promotion; it was a gang video by armed gang members showing a great likelihood of the persons with the firearms possessed for nefarious

12

purposes. Mr. Gay's activity and presence with them violated the terms of probation. The large stacks of currency Mr. Gay brandished, clearly suggested present illicit activity, trade in contraband, currency or other crimes, etc. No other explanation for the stacks of money is realistic or plausible, and none was offered at the hearing. The marijuana being smoked strongly supports Mr. Gay's participation in or being in the presence of unlawful activity consistent with his prior involvement with drugs as described at the hearing.

The probation officers' discovery of the gun in Mr. Gay's bedroom was based on more than an inchoate hunch. Given all that was known about Mr. Gay, the suspicion of him at the time of the warrantless search was reasonable, and supports the probation officers' actions. Because the probation officers' warrantless search was not a "poisonous tree," the subsequent Sheriff's search with a warrant was not a "tainted fruit" to suppress.

Mr. Gay's motion to suppress, Dkt. 25, is **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, on February 4, 2025.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE